IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALPHONSO ALEXANDER JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-2187-K-BN |
| | § | |
| ROUNDPOINT MORTGAGE | § | |
| SERVICING CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge
for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference
from United States District Judge Ed Kinkeade. *See* Minute Entry dated Aug. 20,
2018.

Defendant RoundPoint Mortgage Servicing Corporation ("RoundPoint") has
filed a motion for summary judgment. *See* Dkt. Nos. 15-17. Plaintiff Alphonso
Alexander Jackson opposes the motion, *see* Dkt. Nos. 21-22, and RoundPoint has filed
a reply, *see* Dkt. No. 23.

For the reasons and to the extent explained below, the Court should grant
RoundPoint's Motion for Summary Judgment and dismiss Plaintiff's claims with
prejudice.

**Background**

On October 9, 2014, Plaintiff Alphonso Jackson and his wife, Wamboi Jackson,
purchased real property located at 2647 Bois D'Arc Lane, Grand Prairie, Texas 75052

1

(the "Property"). *See* Dkt. No. 17-1 at 4. To make the purchase, the Jacksons entered into a loan and executed a $181,649.00 promissory note (the "Note") originally payable to PrimeLending, a PlainsCapital Company ("PrimeLending"). *See id*. The Note is secured by a Deed of Trust (the "Deed of Trust"), which encumbers the Property until the Note is paid in full. *See id*. at 7-17.

Upon default by the borrower, the Note and Deed of Trust allow the owner and holder to accelerate the maturity date on the loan which makes the full remainder of the loan balance due immediately. *See id*. at 5. The Deed of Trust permits the owner and holder to foreclose on the Property in order to satisfy the remaining loan balance. *See id*. at 11-12.

On November 19, 2014 Jacksons were notified that PrimeLending had transferred the mortgage's servicing rights to Defendant RoundPoint Mortgage Servicing Corporation ("RoundPoint"). *See id*. at 19. RoundPoint is also the current owner and holder of the Note and Deed of Trust. *See id*. at 84.

The Jacksons submitted a Borrower Assistance Application to RoundPoint in order to modify their loan agreement. *See id*. at 35. And, on June 28, 2017, RoundPoint provided the Jacksons with a letter to inform them that they were "approved to enter into a trial period plan for a mortgage modification." *See id*. at 35. The letter explained that approval was only the first step and that the Jacksons would need to take several other steps "to successfully complete the trial period to permanently modify [their] mortgage." *Id*. at 35.

On July 1, 2017, the Jackson's failed to pay the payment amount due on their loan. *See* Dkt. No. 17-1 at 91.

On July 3, 2017, Jackson and his wife signed and returned the trial period offer. *See id.* at 47.

After the trial period was completed, RoundPoint provided Jackson a letter dated December 13, 2017 containing two copies of the permanent Loan Modification Agreement. *See id.* at 53. To permanently modify their loan, the Jacksons would need to sign and submit to RoundPoint both copies by December 27, 2017. *See id.* at 38, 53.

RoundPoint never received the signed documents by the previously established deadline.

Because the Jacksons did not return the executed permanent Loan Modification Agreement, RoundPoint sent them a Notice of Default and Intent to Accelerate (the "Notice of Default") letter dated January 24, 2018. *See id.* at 68. The Notice of Default explained to the Jacksons that their July 1, 2017 payment was past due in addition to late charges and other payment amounts. *See id*. The Notice of Default demanded the delinquent payments by March 2, 2018 and notified the Jacksons that nonpayment would result in foreclosure and acceleration of the entire debt. Dkt. No. 17-1 at 69.

Then, amid the Jacksons' pending divorce, Plaintiff submitted another Borrower Assistance Application.

On March 13, 2018, RoundPoint notified Plaintiff that due to the Jacksons' pending divorce, RoundPoint needed additional documents to complete Plaintiff's

second Borrower Assistance Application. *See* Dkt. No. 17-1 at 70. Specifically, RoundPoint notified Plaintiff that his application would remain incomplete until he submitted either a divorce decree showing that the pending divorce had been finalized or, if the divorce had not been finalized, proof of his wife's income for the last 30 days. *See id.* at 70. Plaintiff did not submit the additional required documentation to complete his application. *See id.* at 71.

On April 13, 2018, RoundPoint sent Plaintiff an Inactive Application Status notice letter explaining that his Borrower Assistance Application was inactive and that the "foreclosure activity that is either currently suspended will resume or be initiated." *Id.*

On May 14, 2018, the Assignment of the Deed of Trust assigning the secured property to RoundPoint was recorded. *See id.* at 84.

Then, RoundPoint hired Marinosci Law Group, P.C. ("Marinosci") to act as foreclosure counsel and substitute trustee. *See id.* at 92. And, on June 1, 2018, Marinosci recorded the Appointment of Substitute Trustee with RoundPoint's signature in Dallas County public records. *See id.* at 93-94.

On May 31, 2018, Marinosci provided Plaintiff with Notice of Acceleration of Maturity and Notice of Non-Judicial Foreclosure Sale (the "Notice of Foreclosure") three ways: (1) courthouse posting, *see id.* at 93; (2) Dallas County filing, *see id.* at 93, 103; and (3) certified mail, *see id.* at 93-96. The Notice of Foreclosure explained that the Property was scheduled for foreclosure sale on August 7, 2018.

On August 6, 2018, Plaintiff filed this action in the County Court at Law No. 1 for Dallas County, Texas. *See* Dkt. No. 1-1 at 8-18. In his complaint, Plaintiff alleges that RoundPoint is not the owner and holder of the Note and that its attempt to foreclose on the property is therefore improper. *See id.*

Plaintiff alleges the RoundPoint has violated Texas Finance Code § 392.301(a)(8) by failing to provide Plaintiff with proper notice of the acceleration of his loan and of the substitute trustee's sale of the Property. *See id.* at 11-12. Plaintiff also alleges that Defendant was moving to foreclose on the Property while also processing Plaintiff's loan modification, which is prohibited by law. *See id.*

Plaintiff also alleges that RoundPoint violated Texas Finance Code § 392.303(a)(2) by failing to properly account for payments made on the Note and consequently demanding payment in excess of what is permitted. *See id.* at 12.

And Plaintiff alleges that RoundPoint violated Texas Finance Code §§ 392.304(a)(8) and (19) by misrepresenting the status of Plaintiff's loan and for improperly threatening or attempting foreclosure on the Property. *See id.* at 12-13.

Plaintiff also alleges that RoundPoint violated Texas Property Code § 51.002(d) and (b) by improperly threatening foreclosure on the Property without giving notice of acceleration and substitute trustee sale and by giving notice that failed to comply with the Texas Property Code. *See id.* at 14.

Alternatively, Plaintiff claims that RoundPoint breached its contract with Plaintiff because it had no right to foreclose on the Property. *See id.*

RoundPoint removed this case to federal court under diversity jurisdiction. *See* Dkt. No. 1.

And RoundPoint now has filed a motion for summary judgment on all of Plaintiff's claims. *See* Dkt. No. 16.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the

nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks and footnotes omitted).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his or her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested

witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.") (internal quotation marks and footnote omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511(internal quotation marks and footnote omitted).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

I.   The Court should grant RoundPoint's Motion for Summary Judgment on Plaintiff's Texas Property Code claims.

Plaintiff alleges that RoundPoint violated the Texas Property Code because it improperly initiated foreclosure proceedings. Plaintiff alleges that RoundPoint (1) failed to give the notice of acceleration and substitute trustee's sale in compliance with Texas Property Code § 51.002(d); (2) failed to give notice of sale in compliance with Texas Property Code § 51.002(b); and (3) gave one or more notices while simultaneously assuring Plaintiff that his loan was being processed for modification resulting in dual tracking. *See* Dkt. No. 1-1 at 11-12.

A.   RoundPoint had the authority to initiate foreclosure proceedings on the Property as a mortgagee and a mortgage servicer.

The summary judgment evidence shows that RoundPoint had the authority to initiate the foreclosure because RoundPoint qualifies as both a mortgagee and a mortgage servicer under Texas Property Code § 51.0001(4).

The Texas Property Code provides that either a mortgagee or mortgage servicer can administer the foreclosure proceedings on a property. *See* TEX. PROP. CODE §§ 51.002, 51.0025.

A mortgagee is defined as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4). RoundPoint is the mortgagee and security instrument holder with capacity to initiate foreclosure, as evidenced by the

Assignment of the Deed of Trust that was recorded on May 14, 2018. *See* Dkt. No. 17-1 at 84.

Under TEX. PROP. CODE § 51.0001(3), a mortgage servicer is defined as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." TEX. PROP. CODE § 51.0001(3). RoundPoint became the mortgage servicer with capacity to initiate foreclosure on November 19, 2014, when PrimeLending transferred the mortgage's servicing rights to RoundPoint. *See* Dkt. No. 17-1 at 19. RoundPoint was the last person to whom Plaintiff had been instructed by PrimeLending to send payments for the debt secured by a security instrument. *See* TEX. PROP. CODE § 51.0001(3).

Because RoundPoint is both the mortgagee and mortgage servicer, RoundPoint has the authority in either capacity to initiate the foreclosure.

B. **RoundPoint gave Plaintiff all required notices in compliance with the Texas <u>Property Code to initiate foreclosure proceedings on the Property.</u>**

Plaintiff alleges that RoundPoint failed to give notice of acceleration and substitute trustee's sale in compliance with Texas Property Code § 51.002(b). *See* Dkt. No. 1-1 at 14.

Under the Texas Property Code, a mortgage servicer must provide a defaulting debtor with Notice of Default via certified mail "and giv[e] the debtor at least 20 days to cure the default before notice of sale can be given." TEX. PROP. CODE § 51.002(d). Here, Plaintiff had more than 20 days to cure. RoundPoint's Notice of Default letter was dated January 24, 2018, *see* Dkt. No. 17-1 at 68, and the Notice of Foreclosure was sent nearly five months later, *see* Dkt. No. 17-1 at 93-94.

If a debtor does not cure the default within 20 days, the mortgage servicer must provide notice of sale pursuant to procedures specified in the Texas Property Code "at least 21 days before the date of sale." TEX. PROP. CODE § 51.002(b). Texas Property Code § 51.002(b) permits notice by posting on the courthouse door, filing with the county clerk of the real property's county, and serving notice by certified mail. *See id.* § 51.002(b). Marinosci gave Plaintiff notice in all three manners. *See* Dkt. No. 17-1 at 93-96.

Plaintiff also alleges that RoundPoint engaged in dual tracking. "Dual tracking is a term given to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016).

Even assuming Plaintiff actually pleaded this claim, to establish a claim for dual tracking, a plaintiff must plead that the servicer received a complete loss mitigation application more than 37 days before a foreclosure sale. *See id.*; *see also* 12 C.F.R. § 1024.41(g). Here, Plaintiff did not complete his mortgage modification application despite RoundPoint's request for him to do so. *See* Dkt. No. 17-1 at 70. Once Plaintiff failed to complete his application within the established time period, RoundPoint sent him an Inactive Application Status notice letter explaining that his Borrower Assistance Application was inactive and that the "foreclosure activity that is either currently suspended will resume or be initiated." Dkt. No. 17-1 at 71.

And the foreclosure sale that was scheduled for August 7, 2018 never took place because Plaintiff filed this lawsuit. Dkt. No. 1-1 at 14.

12

Based on the undisputed facts in the record, Plaintiff cannot establish a claim for dual tracking.

II.    The Court should grant Defendant's Motion for Summary Judgment on <u>Plaintiff's Texas Finance Code claims.</u>

Plaintiff alleges RoundPoint violated multiple provisions of the Texas Finance Code. First, Plaintiff asserts that RoundPoint violated the Texas Debt Collection Act (TDCA) and Texas Finance Code § 392.301(a)(8) by improperly sending Plaintiff the Notice of Default. Second, Plaintiff alleges that RoundPoint collected or attempted to collect inaccurate payments and threatened to conduct one or more substitute trustee sales in violation of Texas Finance Code § 392.303(a)(2). Third, Plaintiff alleges that RoundPoint violated Texas Finance Code §§ 392.304(a)(8) and (a)(19) by misrepresenting the status of his debt and making fraudulent misrepresentation about the loan to Plaintiff.

A.    RoundPoint's Motion for Summary Judgment should be granted on Plaintiff's claim for violation of Texas Finance Code §  392.301(a) and the <u>TDCA.</u>

To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as result of the defendant's wrongful act. *See* TEX. FIN. CODE §§ 392.001 *et. seq.* Under Section 392.301(a) of the Texas Finance Code, "a debt collector may not use threats, coercion, or attempts to coerce that [involves] ... threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a).

The United States Court of Appeals for the Fifth Circuit has held that mortgage "servicers and assignees are debt collectors, and therefore are covered, under the TDCA." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis in original); *accord Starling v. JPMorgan Chase Bank, N.A.*, No. 3:13-cv-777-M-BN, 2013 WL 4494525, at *7 (N.D. Tex. Aug. 22, 2013) ("Because Defendant is attempting to collect on the mortgage note and foreclose on the Property, it is a debt collector under the TDCA.").

But the Fifth Circuit has also held that "foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 378 (5th Cir. 2015).

Here, the record evidence shows that Plaintiff failed to make payments on his loan since at least July 1, 2017 and is therefore currently delinquent on his loan payments. And the evidence shows that RoundPoint lawfully provided Plaintiff with the Notice of Default and the Notice of Foreclosure. Because Plaintiff is currently in default, RoundPoint's threat of foreclosure is not an act that is prohibited by law.

More fundamentally, Plaintiff has not suffered any damages. Because Plaintiff filed this action, the foreclosure sale that was scheduled to take place on August 7, 2018 never occurred, and Plaintiff remains in possession of the Property.

Plaintiff's claims under Texas Finance Code § 392.301(a) and the TDCA fail as a matter of law.

B. RoundPoint's Motion for Summary Judgment should be granted on Plaintiff's Texas Finance Code § 392.303(a)(2) claim.

Plaintiff alleges that RoundPoint collected or attempted to collect interest, charges, fees, or expenses incidental to foreclosure not authorized by the Deed or Note and not chargeable to the Plaintiff. Plaintiff claims that RoundPoint failed to accurately and truthfully account for Plaintiff's payments, so RoundPoint's demands were for inaccurately excessive amounts. Plaintiff also claims that RoundPoint improperly threatened to conduct a foreclosure sale that would deprive Plaintiff of title, use, and possession of the Property. *See* Dkt. No. 1-1 at 12.

Texas Finance Code § 392.303(a)(2) bars a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2).

In *Williams v. Wells Fargo Bank, N.A.,* the Fifth Circuit held that a plaintiff's general assertions of "wrongful charges," without specific factual support, were insufficient to state a claim under Section 392.303(a)(2) because they were conclusory in nature. 560 F. App'x 233, 240 (5th Cir. 2014). This standard has been applied by courts in this district. *See Adams v. United States, N.A.,* No. 3:17-cv-723-BBN, 2018 WL 2164520, at *11 (N.D. Tex. Apr. 18, 2018) (holding that plaintiff's failure to show facts that defendant was not authorized to collect such compensation under the Note constituted a failure to state a claim under Section 392.303(a)(2)); *Westinde v. JP Morgan Chase Bank, N.A.*, No. 3:13-cv-3576-O, 2014 WL 4631405, at *8 (N.D. Tex.

15

Sept. 16. 2014) (declaring that conclusory allegations are insufficient to state a claim under Section 392.303(a)(2)); *Bircher v. Bank of New York Mellon*, No. 4:12-cv-171, 2012 WL 3245991, at * 3 (N.D. Tex. Aug. 9, 2012) (finding plaintiff failed to state a plausible allegation of violation of § 392.303(a)(2) where petition contained scant factual specificity regarding any misrepresented amounts).

Here, Plaintiff does not point to any specific unauthorized fees or penalties that were charged to him. Nor does Plaintiff identify any of the payments which RoundPoint failed to acknowledge. Plaintiff claims in a conclusory fashion that RoundPoint failed to "account for and acknowledge payments made" by Plaintiff. Dkt. No. 1-1 at 12. Plaintiff also generally claims that RoundPoint violated the law by demanding "payment from Plaintiff of sums in excess of those permitted under the Note and Deed of Trust," without identifying what those payments are.

Plaintiff's assertions of unrecorded payments wrongful charges, without specific factual support, are insufficient to state a claim under Section 392.303(a)(2) because they are conclusory in nature.

C. RoundPoint's Motion for Summary Judgment should be granted on Plaintiff's claim for violations of § 392.304(a)(8) and § 392.304(a)(19) of the Texas Finance Code.

Plaintiff alleges that RoundPoint misrepresented the status of his debt and made fraudulent misrepresentations to him. Plaintiff claims that RoundPoint never had any intention of approving the loan modification after inducing Plaintiff to submit supplemental documentation, and that this was all a ploy to accelerate the loan balance and ultimately foreclose on the property. *See* Dkt. No. 1-1 at 12-13. Plaintiff claims that RoundPoint also demanded payments that were not authorized

by the Note. *See id.* And, Plaintiff asserts that RoundPoint induced him with malice or gross negligence to not make regular payments and instead make different payments and submit a modification package. *See id.*

Under Texas Finance Code § 392.304(a)(8), debt collectors are prohibited from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). Debt collectors are barred from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FIN. CODE § 392.304(a)(19).

To classify as a violation under the TDCA, the debt collector's misrepresentation "must have made an affirmative statement that was false or misleading." *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (internal quotation marks omitted).

But Plaintiff has failed to allege any specific facts to show that RoundPoint made affirmative statements that were false and misleading in violation of Section 392.304(a)(8).

In *Miller*, the Fifth Circuit held that, "because the [plaintiffs] always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed; [and (iii)] that they had defaulted," the defendant did "not misrepresent the character, extent, amount of the [plaintiff's] debt in violation of [Section] 392.304(a)(8)." 726 F.3d at 723.

17

Here, RoundPoint cannot be found to have misrepresented the character, extent, or amount of Plaintiff's debt. When Plaintiff fell delinquent on the loan, RoundPoint sent Plaintiff the Notice of Default as it was permitted to do under the Note and Deed of Trust. And, RoundPoint agreed to enter into a loan modification agreement with Plaintiff on the condition that Plaintiff provide certain information. And only once Plaintiff failed to complete the Borrower Assistance Application as required did RoundPoint notify Plaintiff that it would resume pursuing its rights under the Note and Deed of Trust and move to foreclose on the Property. None of these actions on RoundPoint's behalf can possibly amount to a misrepresentation of the loan. Rather, RoundPoint's actions are expressly authorized under the Note and Deed of Trust.

Plaintiff has also failed to allege any specific facts to show that RoundPoint employed false representations or deceptive means to collect a debt in violation of Section 392.304(a)(19).

Texas Finance Code § 392.304(a)(19) is a catch-all provision that addresses all false representations or deceptive means that a party might employ in collecting a debt. *See Williams*, 560 F. App'x. 233 at 240.

Plaintiff claims that RoundPoint violated Section 392.304(a)(19) when it "failed to properly process the Loan for modification." Dkt. 1-1 at 12. But the Fifth Circuit has held that "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead relate to its modification and thus do not state a claim under Section 392.304(a)(19)." *Thompson*, 783 F.3d at 1026.

And the summary judgment evidence shows that Plaintiff was given notice that his loan modification application was incomplete over a month before RoundPoint accelerated the loan balance and scheduled the Property for foreclosure. *See* Dkt. No. 16 at 22.

Plaintiff was approved for a permanent loan modification but failed to return an executed copy of the loan modification agreement by the required deadline. And Plaintiff failed to provide all the required documents for a second loan modification agreement. RoundPoint sent Plaintiff an Inactive Application Status Notice explaining that it had not received all of the requested information and that foreclosure activity would resume.

All of the summary judgment evidence shows that RoundPoint did not misrepresent the status of Plaintiff's loan. In fact, it appears that RoundPoint made every effort to make the status of Plaintiff's loan known to him and only took steps to foreclose on the Property once Plaintiff was given proper notice.

III.   **The Court should grant RoundPoint's Motion for Summary Judgment on <u>Plaintiff's breach of contract claim.</u>**

Plaintiff alleges that, even if RoundPoint proves to be the Note's holder, RoundPoint's appointed substitute trustee lacked authority to accelerate the Note, give notices of default, and threaten the August 7, 2018 foreclosure sale. *See* Dkt. No. 1-1 at 14. Specifically, Plaintiff alleges that RoundPoint's actions amount to a breach of contract under the Deed of Trust. *See id.* at 14.

But Plaintiff does not support his claim for breach of contract with anything more than the conclusory statement that RoundPoint breached the Deed of Trust because it violated the Texas Property Code §§ 51.002(b), 51.002(d).

To succeed on a breach of contract claim under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

Damages are an essential element to a breach of contract claim. *See id.* In Plaintiff's complaint, he alleges damages based on a pending foreclosure. *See* Dkt. No. 1-1 at 14. But potential foreclosure is an insufficient basis for compensatory damages. *See Marquez v. Fed. Natl Mortgage Ass'n,* No. 3:10-cv-2040-L, 2011 WL 3714623, at *6 (N.D. Tex. Aug.23, 2011) (citing *Peterson v. Black,* 980 S.W.2d 818, 823 (Tex. App. -- San Antonio 1998, no pet.)) (holding that, "where a mortgagor's possession is undisturbed, he has suffered no compensable damage."). Accordingly, Plaintiff has not properly alleged that he suffered damages enough to establish a breach of contract claim.

The Court should grant RoundPoint's Motion for Summary Judgment on Jackson's breach of contract claim.

## Recommendation

For the reasons explained, the Court should grant RoundPoint's Motion for Summary Judgment [Dkt. No. 16] and dismiss Plaintiff's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 21, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE